**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Floyd-Isaac Ellis, Jr.,** | ) | **CASE NO. 4:24 CV 2028** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **v.** | ) | |
| | ) | <u>**Memorandum of Opinion and Order**</u> |
| **Mahoning County Child Support** | ) | |
| **Enforcement Agency, _et al._,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>INTRODUCTION</u>

_Pro se_ Plaintiff Floyd-Issac Ellis, Jr. filed this action under 42 U.S.C. § 1983 to challenge child support orders issued in Mahoning County in 2012, and in Columbiana County in 2023. His Complaint is difficult to decipher. However, he appears to claim that the child support orders are void because the state statutes establishing child support are unconstitutional. He bases this argument on his assertion that judges who issue child support orders in Ohio are not acting as judges but rather as private contractors. He claims they lack jurisdiction to issue orders as contractors. He asserts claims for denial of due process and equal protection, and the right to travel. He also asserts a claim for violation of the separation of powers doctrine. He seeks monetary damages.

Plaintiff also filed an Application to Proceed _In Forma Pauperis_ (Doc. No. 2). That Application is granted.

**BACKGROUND**

Plaintiff was married to Nichole Sims from 2006 to 2012.  (Doc. No. 6 at PageID #: 326).  They have one child.  Ms. Sims filed for divorce from Plaintiff in 2012.  Defendant Katherine Rudzik represented her in the divorce proceedings.  (Doc. No. 6 at PageID #: 330).  Plaintiff did not answer the Complaint for divorce and did not appear in court.  On September 24, 2012, Mahoning County Domestic Relations Court Judge Beth A. Smith granted Ms. Sims's uncontested divorce and ordered Plaintiff to pay child support to Ms. Sims in the amount of $148.74 per month.  (Doc. No. 6 at PageID #: 326).

In September 2022, the Mahoning County Child Support Enforcement Agency ("Mahoning County CSEA") conducted a child support investigation.  Although Plaintiff's obligation to make monthly child support payments terminated on September 2, 2021, when the child turned eighteen years old, the Mahoning County CSEA determined he had an arrearage of $4,815.19 in unpaid child support.  (Doc. No. 6 at PageID #: 326-27).  On October 14, 2022, Judge Beth A. Smith ordered him to make monthly payments of $174.98 to Ms. Sims until the arrearage was paid in full.  (Doc. No. 6 at PageID #: 327).

On July 19, 2022, the Columbiana County Child Support Enforcement Agency ("Columbiana County CSEA") filed a parentage action against Plaintiff in the Columbiana County Juvenile Court on behalf of Jenna Jackson, and sought to have Plaintiff declared to be the biological father of her child, A.H.  The Columbiana County CSEA was represented by former Assistant Prosecutor Kelly Linger.  Genetic testing confirmed that Plaintiff is the child's father. In March 2023, Columbiana County Juvenile Court Judge Thomas M. Baronzzi and

Magistrate Douglas A. King granted Plaintiff rights of companionship and ordered him to pay child support in the amount of $180.70 per month.  (Doc. No. 5 at PageID #: 111).  Plaintiff failed to comply with the child support order and the Columbiana County CSEA filed a Motion to Show Cause why Plaintiff should not be held in contempt of court.  (Doc. No. 5-1 at PageID #: 171).  The motion claimed that Plaintiff owed $3541.88 as of April 2024.  The Juvenile Court found him in contempt but gave him the opportunity to purge the contempt by coming into substantial compliance with the child support order.  (Doc. No. 5-1 at PageID #: 173).

From April 2024 to October 2024, Plaintiff sent a barrage of documents to Judge Baronzzi and Magistrate King titled  "Notice to Principal is Notice to Agent, Notice to Agent is Notice to Principal" and "Interrogatory Questions" demanding the judges make statements and provide frivolous or fictitious documents.  In September 2024, Plaintiff claimed Judge Baronzzi and Magistrate King were in default and claimed he was placing a default judgment of his own creation against them.  (Doc. No. 5-1 at PageID #: 293).  He sent them an invoice for $500,000.00.  (Doc. No. 5-1 at PageID #: 322).  On October 15, 2024, Judge Baronzzi and Magistrate King recused themselves from presiding over Plaintiff's contempt case to avoid the appearance of any conflict.  (Doc. No. 5-1 at PageID #: 323-24).

Plaintiff has now filed this action to challenge his child support orders.  He asserts that the Ohio statute that governs child support is not valid because it violates the separation of powers doctrine and "do[es] not contain the three elements the Constitution mandates must be present for something to be a valid law."  Plaintiff never explains what those three elements are nor does he explain how the Ohio child support statute lacks whatever those elements may be.

-3-

He also claims that the Defendants denied him due process, equal protection, and the right to travel.  Although he asserts six counts in his Complaint, the crux of his arguments appears to be that an Ohio statute allows the County CSEA to contract with government and private entities to carry out the purposes of Title IV-D of the Social Security Act.  He claims that this means the judges who entered his child support orders were not acting as judges but rather as private contractors.  He contends that orders issued by contractors are void and, therefore, his child support orders are void.  He also includes a claim for violation of the separation of powers doctrine.  He seeks monetary damages against the Defendants under 42 U.S.C. § 1983.

The Defendants filed Motions to Dismiss (Doc. Nos. 4, 5, and 6).  The Court, however, does not need to address these motions because the Plaintiff's Complaint is frivolous, fails to state a claim upon which relief may be granted, and is asserted against Defendants who are immune from suits for damages.  Dismissal is warranted under 28 U.S.C. § 1915(e).

### STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e)(2) if it finds that the complaint is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  A claim is frivolous if it lacks an arguable basis in law or fact, meaning it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke v. Williams*, 490 U.S. 319, 327

-4-

(1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*  In reviewing a complaint, the court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## ANALYSIS

As an initial matter, none of the Defendants is subject to suit for damages under 42 U.S.C. § 1983.  Katherine Rudzik is a private attorney.  To state a claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Generally, to be considered to have acted "under color of state law," the defendant must be a state or local government official or employee.  A

privately retained attorney is not considered a state actor under 42 U.S.C. § 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also Polk County v. Dodson*, 454 U.S. 312, 321 (1981).

Judges Beth A. Smith and Thomas A. Baronzzi and Magistrate Judges Thomas D. Dawson and Douglas A. King are absolutely immune from § 1983 suits for damages that stem from decisions they made from the bench or from actions they took in the course of presiding over a case in their court. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Plaintiff's only allegations against these judicial officers concern decisions these judicial officers made in the course of his child support cases, and contempt proceedings for non-payment of support. They are immune from damages in this case.

Kelly Linger is also absolutely immune from suit as the assistant prosecutor that represented the Columbiana County CSEA in the child support suit and contempt action for non-payment of child support. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Absolute immunity is extended to prosecuting attorneys when the actions in question are those of an advocate. *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir.2003). Immunity also reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating ... judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990). The few allegations in the Complaint that are aimed at Kelly Linger all pertain to the

representation this Defendant provided to the government.  She is not subject to suit in this action.

The State of Ohio and its agencies, which include the Ohio Department of Jobs and Family Services and the Ohio Bureau of Motor Vehicles, are also immune from suit.   The Eleventh Amendment is an absolute bar to the imposition of liability upon States and their agencies.  *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

The Mahoning County Child Support Enforcement Agency and the Columbiana County Child Support Enforcement Agencies are not *sui juris*, meaning they are merely agencies of the County and cannot be sued in their own right. *Ewing v. Cuyahoga Cnty. Off. of Child Support Servs.*, No. 1:24 CV 997, 2024 WL 4252565, at *2 (N.D. Ohio Sept. 20, 2024)(Cuyahoga County Child Support Enforcement Agency is not *sui juris*); *Foster v. Cuyahoga Cty. Child Support Enf't. Agency*, No.1:19 CV 1571, 2019 WL 6841773, 2019 U.S. Dist. LEXIS 215856 *4 (N.D. Ohio Dec. 16, 2019) (Cuyahoga County Child Support Enforcement Agency is not *sui juris* and, therefore, cannot be sued in its own right); *Loper v. Cuyahoga Cty. Children & Family Servs.*, No. 1:18 CV 1598, 2019 WL 1597552, 2019 U.S. Dist. LEXIS 64375 *5 (N.D. Ohio Apr. 15, 2019) (Cuyahoga County Children and Family Services is not *sui juris* and cannot be sued in its own right); *Pulse v. Gale*, No. 3:16 CV 91, 2016 U.S. Dist. LEXIS 56044, 2016 WL 1704312, at *2-3 (N.D. Ohio Apr. 27, 2016) (Erie County Adult Probation Department is not *sui juris* and cannot be sued in its own right) (collecting cases); *Wilson v. Trumbull Cty. Dep't of Job & Family Servs.*, No. 4:12 CV 02163, 2013 U.S. Dist. LEXIS 154926, 2013 WL 5820276,

-7-

at *3 (N.D. Ohio Oct. 29, 2013) (finding that "numerous district courts" have found that county agencies are not *sui juris*).  Consequently, Plaintiff's claims against these Defendants fail as a matter of law.

Moreover, even if Plaintiff had identified a Defendant against whom a claim for damages could be asserted under 42 U.S.C. § 1983, his claims fail as a matter of law.  Federal law empowers only the Supreme Court to review "final judgments or decrees rendered by the highest court of a State." 28 U.S.C. § 1257.  The negative implication of § 1257 is that lower federal courts lack jurisdiction to review state court judgments.  This is known as the Rooker-Feldman doctrine.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

The Supreme Court has confined Rooker-Feldman to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). Stated differently, Rooker-Feldman prevents an unsuccessful litigant in state court from circumventing the state's judgment through federal review.  It, however, does not deny a federal court jurisdiction over a federal claim independent of a state court judgment.  *Id.* at 293.

Determining when a plaintiff seeks review of a state court judgment versus when a plaintiff presents a federal claim independent of a state court judgment can be difficult.  To determine whether Rooker-Feldman bars a claim, this Court must look to the "source of the

-8-

injury the plaintiff alleges in the federal Complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir.2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310.  If the source of the plaintiff's injury is the state court judgment itself, then the Rooker-Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id*.; *see Lawrence*, 531 F.3d at 368–69.  In conducting this inquiry, a court should also consider the plaintiff's requested relief.  *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

Here, it is difficult to determine Plaintiff's claimed source of injury because his claims are so difficult to decipher.  He contends his "constitutional rights were being violated under IV-D contract, because the officers were not operating in their official capacity, by signing the IV-D contract all said Defendants agreed to leave their office for personal gain while conspiring to cause harm with a malicious and abusive process."  (Doc. No. 1 at PageID #: 10).  He also claims the Defendants "conspir[ed] under a IV-D contract to issue void orders, violating the Due Process of Law and Equal Protection, violation of the 14th Amendment."  (Doc. No. 1 at PageID #: 10).

To the extent that Plaintiff is seeking to have this Court declare his child support orders to be void and unenforceable, his injury would be the state court judgment itself and Rooker-Feldman would apply.  This Court lacks subject matter jurisdiction to declare those orders to be invalid or to relieve him from the effects of those judgments.

To the extent he is only attempting to have the statutes declared unconstitutional, his claims are wholly without merit.  Title Four, section D of the Social Security Act, 42 U.S.C.A.

-9-

§§ 651–669b, often referred as "Title IV-D" is part of a larger statute providing an interlocking set of cooperative federal-state welfare programs.  Title IV-A of the Social Security Act, 42 U.S.C. §§ 601–617, provides federal funding to state public assistance programs.  Congress determined that a significant amount of public assistance funds was being distributed to single parents supporting children without financial support from the other parent.  To help families receiving public assistance achieve financial stability, Congress provided an incentive to states to improve child support collection by enacting Title IV-D which made the state's  receipt of federal funding for public assistance programs under Title IV-A contingent on the development and operation of a child support enforcement program under Title IV-D.  42 U.S.C.A. § 651; *Williams v. Wayne Cnty. Friend of Ct.*, No. 16-12888, 2017 WL 3944393, at *1 (E.D. Mich. July 14, 2017)(citing *Hodges v. Shalala*, 121 F.Supp.2d 854, 860–61 (D.S.C. 2000).

Under Title IV-D, each state is required to develop and implement a detailed plan for the collection of child support arrearages, form a comprehensive system to establish paternity and locate absent parents, and create programs to assist custodial parents with obtaining child support orders.  42 U.S.C. §§ 651, 654.  This plan had to be submitted and approved by the Secretary of Health and Human Services. 42 U.S.C. § 602(a)(2);§ 652(a)(3).  The state must also create a IV-D agency to implement all aspects of the plan.  Not all child support orders issued by state courts are obtained through IV-D services.  If the custodial parent receives public assistance, the state takes an active role in pursuing the collection of child support using the Title IV-D programs.  Parents who are not receiving public assistance may also use the IV-D

services for a nominal fee. 42 U.S.C. §§ 651, 654(4).  The structure of each state's Title IV–D

agency, like the services it provides, must also conform to federal guidelines.

Congress anticipated the difficulty one state agency would have in carrying out all of the

mandated functions of Title IV-D if the agency operated in isolation.  Title IV-D requires the

state plan to specify that the state must enter into cooperative agreements with state and local

courts, law enforcement officials, district attorneys, attorneys general, prosecutors, corrections

officials, and Indian Tribes or Tribal organizations to share pertinent information that is relevant

in carrying out the programs and services of Title IV-D.  45 C.F.R. § 302.34.  This allows for

sharing and the exchange of information between the Title IV-D workers and the Title IV-A

workers to achieve the best results.

Under Ohio's plan, CSEA may also enter into contracts with a governmental entity or a

private entity to provide IV-D services. OHIO ADMIN. CODE § 5101:12-1-80.  This regulation

suggests potential contracts which CSEA may enter into with government and private parties.

These may include: (1) contracts with the county prosecutor or a private attorney to provide

legal services to CSEA to pursue child support in cases in which the custodial parent is

receiving public assistance; (2) contracts with the sheriff or private parties to act as process

servers; and (3) contracts with the county court to provide an additional court clerk or a

magistrate to work on Title IV-D cases.  OHIO ADMIN. CODE § 5101:12-1-80(D).

Plaintiff focuses on the word "contract" in Ohio Admin. Code § 5101:12-1-80 and

concludes, without support, that because CSEA may enter into contracts with courts, all judges

who preside over cases in which child support orders are issued are not acting as judges but

-11-

rather as private contractors for personal gain.  He then concludes that only judges can issue child support orders and the statutes and regulations which allow this are unconstitutional.

First, Plaintiff does not point to any actual agreement which CSEA entered into with the Mahoning County Domestic Relations Court or the Columbiana County Juvenile Court. Second, an agreement between a county CSEA and a county court does not equate to a private contract with a particular judge.  Third, any order issued by a judge in the course of a case within the subject matter jurisdiction of the court over which he or she presides is a judicial order. Juvenile courts and domestic relations courts in Ohio have subject matter jurisdiction to determine paternity and issue child support orders.  Ohio Rev. Code § 2151.23(B) (2) and (4), § 3111.84 and § 2301.03.  The fact that government agencies can work together to ensure that both parents provide support for their children does not negate a judge's statutory authority over these cases nor does it deprive the court of jurisdiction.  Plaintiff does not present a plausible or coherent argument suggesting the statutes and regulations are unconstitutional.

Finally, Plaintiff claims he is being denied his constitutional right to travel because his driver's license is suspended until he pays his child support arrearages.  The Supreme Court has identified the right to travel from one state to another as a fundamental right of United States citizenship. *See Saenz v. Roe*, 526 U.S. 489, 500-01 (1999). This right has three components: (1) the right of a citizen of one state to enter and to leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state.  *Id*. at 500.  Plaintiff does not clearly explain how he believes the

-12-

CSEA Defendants violated his right to travel. It appears, however, that he is confusing the constitutional right to travel with the qualified privilege to drive an automobile. *George Taylor Duncan v. Linda Cone*, No. 00–5705, 2000 WL 1828089, at *2 (6th Cir. Dec. 7, 2000). Plaintiff has not alleged facts suggesting he is unable to travel between states. He just cannot drive a motor vehicle to do so. He has other modes of transportation at his disposal, including being a passenger in a vehicle. The suspension of his driver's license did not deny him the right to travel.

### CONCLUSION

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan

Dated: 2/18/25

PATRICIA A. GAUGHAN
United States District Court

-13-